UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-2655 JGB (SHKx)** | Date | August 26, 2024 |
|---|---|---|---|
| Title | *Estate of Alicia Upton, et al. v. County of Riverside, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Defendant's Motion to Dismiss (Dkt. No. 17); and (2) VACATING the September 9, 2024 Hearing (IN CHAMBERS)

Before the Court is a motion to dismiss filed by Defendants Chad Bianco (in his individual and official capacities), the County of Riverside, Edward Delgado, James Krachmer, and Victoria Varisco-Flores (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] ("Motion," Dkt. No. 17.)  The Court determines this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion.  The Court **VACATES** the September 9, 2024 hearing.

## I.  BACKGROUND

On December 31, 2023, Plaintiffs Estate of Alicia Upton (the "Estate"), Nichole Thompson, and Matthew Upton (collectively, "Plaintiffs") filed a complaint against Defendants Riverside County Sheriff Chad Bianco (in his individual and official capacities), the County of Riverside (the "County"), Edward Delgado, James Krachmer, the Riverside County Sheriff's Department ("RCSD"), Victoria Varisco-Flores, and Does 1 through 10.  ("Complaint," Dkt. No. 1.)  The Complaint alleges eleven causes of action: (1) failure to protect from harm under the Fourteenth Amendment under 42 U.S.C. § 1983 ("Section 1983") on behalf of Plaintiff Estate against Does 1 through 10; (2) failure to provide medical care under Section 1983 on behalf of Plaintiff Estate against Does 1 through 10; (3) deprivation of the right to familial relationship with

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Decedent under Section 1983 on behalf of Plaintiffs Thompson and Upton against Does 1 through 10; (4) a Monell claim for unconstitutional policies, practices, and customs under Section 1983 on behalf of Plaintiff Estate against Defendants the County and RCSD; (5) failure to train, supervise and discipline under Section 1983 on behalf of Plaintiff Estate against Defendants Sheriff Bianco, Delgado, Krachmer, Varisco-Flores, and Does 7 through 10; (6) negligence – wrongful death on behalf of Plaintiffs Thompson and Upton against all Defendants; (7) negligence – medical malpractice on behalf of Plaintiff Estate against all Defendants; (8) violation of California Government Code § 845.6 on behalf of Plaintiff Estate against all Defendants; (9) violation of California Civil Code § 52.1 ("Bane Act") on behalf of Plaintiff Estate against all Defendants; (10) intentional infliction of emotional distress on behalf of Plaintiffs Thompson and Upton against Defendant Sheriff Bianco; and (11) declaratory relief pursuant to 28 U.S.C. § 2201 on behalf of all Plaintiffs against all Defendants.  (See Complaint.)

On June 11, 2024, Plaintiffs served Defendants County of Riverside, RCSD, and Sheriff Chad Bianco.  (Dkt. Nos. 11, 12, 16.)  On June 12, 2024, Plaintiffs served Defendants Edward Delgado, James Krachmer, and Victoria Varisco-Flores.  (Dkt. Nos. 13–15.)

On July 2, 2024, Defendants filed the Motion, moving to dismiss the Complaint pursuant to Rule 12(b)(6).  (Motion.)  In support of the Motion, Defendants submitted the declaration of Caylin Jones ("Jones Decl.," Dkt. No. 17-1) and attached exhibits (Dkt. Nos. 17-2–17-11).

Also on July 2, 2024, Defendants filed a request for judicial notice.  ("Defendants' RJN," Dkt. No. 18.)  In their RJN, Defendants request the Court take judicial notice of the following documents and facts: (1) Plaintiffs' government claim ("Claim," Dkt. No. 18-1); (2) the notice of return of Plaintiffs' late government claim ("Notice of Returned Claim," Dkt. No. 18-2); (3) Plaintiffs' application to present their claim "incorrectly deemed 'late'" ("Plaintiffs' Late Claim App.," Dkt. No. 18-3); the County's denial of Plaintiffs' late claim application ("Denial of Late Claim App.," Dkt. No. 18-4); (5) Plaintiffs' state court petition for order permitting a late government claim ("Petition," Dkt. No. 18-5); (6) the Riverside Superior Court's tentative denial of Plaintiffs' Petition ("Petition Denial," Dkt. No. 18-6); (7) Plaintiffs' notice of appeal of the Petition Denial ("Plaintiffs' Appeal," Dkt. No. 18-7); and (8) the case information for Plaintiffs' appeal in the California Court of Appeal ("Appellate Docket," Dkt. No. 18-8). [2]  (See Motion.)

---

[2] In a motion to dismiss under Rule 12(b)(6), a court may consider "matters of judicial notice" without converting the motion into a motion for summary judgment.  U.S. v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Courts are required to take judicial notice of facts if requested by a party and supplied with the necessary information.  Id.  Additionally, Courts often take judicial notice of such documents in connection with a motion to dismiss.  See Clarke v. Upton, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010).

On July 22, 2024, Plaintiffs opposed the Motion.  ("Opposition," Dkt. No. 20.)  In support of their Opposition, Plaintiffs filed a declaration of Christian Contreras ("Contreras Decl.," Dkt. No. 20-1) and attached exhibits.  Also on July 22, 2024, Plaintiffs filed a request for judicial notice of Plaintiff Matthew Upton's incarceration with the Federal Bureau of Prison.[3]  ("Plaintiffs' RJN," Dkt. No. 20-2.)

On July 29, 2024, Defendants replied.  ("Reply," Dkt. No. 21.)

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

On or about April 19, 2022, Alicia Upton ("Decedent") was arrested and booked into the RCSD correctional facility.  (Complaint ¶ 30.)  Upon information and belief, Ms. Upton completed a preliminary medical and psychological screening.  (Id. ¶ 31.)  During the screening, Decedent expressed suicidal thoughts to the RCSD classification deputy: "I always kinda wanted to die."  (Id.)   From then on, Decedent continued to engage in suicidal behavior, and was ultimately transported to the Robert Presley Detention Center ("RPDC").  (Id. ¶ 32.)  On April 21, 2022, Decedent was placed in a safety cell.  (Id.)  Decedent's mental health rating was classified as "severe."  (Id.)

On April 24, 2022, Decedent was removed from the safety cell and placed in a cell "which was known to pose risk of death an injury to suicidal inmates by virtue of the 'hazards' contained in the cell."  (Id. ¶ 33.)  The hazards include bed sheets which were known to be used as ligatures by suicidal inmates and attachment points for hanging such as the corners of the bunk beds.  (Id.)  Decedent remained in this hazardous cell from April 24, 2022 to April 28, 2022.  (Id. ¶ 34.)  During this period, Decedent did not receive a designation regarding her medical condition that would alert those in charge of her care that she required 24-hour monitoring, medical treatment, psychological treatment, and follow-up care.  (Id.)

On April 28, 2022, at approximately 8:14 p.m., Decedent created a noose from her bed sheets.  (Id. ¶ 35.)  Four minutes later, and at approximately 8:18 p.m., Decedent proceeded to tie the bed sheets around the upper bunk and begin the process of asphyxiating herself through strangulation.  (Id.)  Decedent was ultimately pronounced dead at 9:12 p.m.  (Id.)   The entire act

---

Here, Defendants request judicial notice of documents in connection with this Motion.  Plaintiffs do not oppose.  Accordingly, the Court **GRANTS** Defendants' RJN.

[3] "[P]ublic records maintained on government websites are generally subject to judicial notice."  Johnson v. DBTA, LLC, 424 F. Supp. 3d 657, 662 (N.D. Cal. 2019) (citation omitted).  Here, Plaintiff requests judicial notice of publicly available records maintained on the Federal Bureau of Prison's website.  Accordingly, the Court **GRANTS** Plaintiffs' RJN.

was captured by the surveillance camera that was placed inside of Decedent's cell.  (Id. n.1.) RCSD custody staff and/or CHS medical staff failed to notice Decedent performing the act on video.  (Id.)

Upon information and belief, the County's medical and custody staff had an opportunity to observe the clear signs of Decedent's acute suicidality.  (Id. ¶ 36.)  In addition to the initial expression of suicidal thoughts during Decedent's preliminary medical and psychological screening, Decedent displayed "obvious signs" of self-harming behavior as her left arm displayed 20 cut marks.  (Id.)  The County's medical and custody staff acted indifferently to Decedent's health and safety.  (Id.)  Upon information and belief, the County's pattern and practice of not conducting proper and timely welfare and safety checks allowed Decedent's dire need for emergency medical intervention to go unnoticed by the medical and mental health staff of RPDC, who were responsible for monitoring and ensuring the welfare of all inmates, including Decedent.  (Id. ¶ 37.)

Decedent was twenty-one years old when she died on April 28, 2022 while in custody at the RPDC.  (Id. ¶ 38.)  Decedent was a pretrial detainee and, therefore, not proven guilty.  (Id. ¶ 39.)  Decedent's death occurred in the deadliest year within County jails, in which eighteen people died.  (Id. ¶ 43.)  Prior to 2022, the County had not logged more than twelve such deaths in any year since 2005.  (Id.)  The eighteen deaths include six overdoses, two homicides resulting from inmate-on-inmate violence, three suicides, four natural cause deaths, and three of undetermined cause.  (Id. ¶ 45.)  Defendants' deliberate indifference to protecting pretrial detainees from hazards resulted in illegal drugs permeating the County jails.  (Id. ¶ 46.)  According to Defendant Krachmer, from November 2021 through November 2022, County jails experienced 140 overdoses, with inmates overdosing at least twice a week within County jails.  (Id.)

Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides.  (Id. ¶ 48.)  On November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at RPDC.  (Id.)  From November 19, 2022 through November 23, 2022, Wall made repeated requests for psychiatric care and medication, which were ignored by the custody and medical staff.  (Id.)  Shortly thereafter, Wall attempted suicide by jumping off the second story of his housing module.  (Id.)

### III.   LEGAL STANDARD

#### A.   Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock

Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B.    Rule 4(m)**

Rule 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed," unless the court extends the time for service for good cause. Fed. R. Civ. P. 4(m). If the plaintiff fails to perfect service within that timeframe, then "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Id. Rule 4(m) is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint. United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984).

### IV.    DISCUSSION

The Complaint alleges eleven causes of action. (See Complaint.) Defendant argues that (1) the Complaint must be dismissed in its entirety because Plaintiffs failed to timely serve their Complaint in compliance with Rule 4(m), and (2) because Plaintiffs failed to comply with the

California Tort Claims Act, their state law claims must be dismissed. (See Motion.) As explained below, the Court disagrees.

### A.  Rule 4(m)

Pursuant to Rule 4, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. "Rule 4(m) requires a two-step analysis in deciding whether or not to extend the prescribed time period for the service of a complaint." In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001). If the plaintiff shows good cause for late service, the court must extend the time period for service. Id. If the plaintiff does *not* show good cause, the court has discretion to either dismiss the complaint without prejudice or retroactively extend the time period for plaintiff to serve defendant(s). Id. "In making extension decisions under Rule 4(m) a district court may consider factors 'like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007) (quoting Troxell v. Fedders of N. Am., Inc., 160 F.3d 381, 383 (7th Cir. 1998)).

Here, Plaintiffs filed the Complaint on December 31, 2023, and thus had until March 31, 2024 to serve Defendants. They did not serve Defendants until June 11 and 12, 2024. Plaintiffs here make no attempt to demonstrate good cause for failing to timely serve Defendants. (See Opposition.) Accordingly, the Court considers the Efaw factors to determine whether to extend the service deadline. First, as Defendants highlight, if the Complaint is dismissed, the statute of limitations will bar Plaintiffs from refiling this action. (See Motion at 5.) Second, Plaintiffs argue they will be "severely prejudiced" by dismissal, whereas Defendants would not be prejudiced by the extension of the service deadline—a fact which Defendants do not dispute. (Opposition at 15; Motion at 10–11.) Defendants' concession makes sense, as it is undisputed that Defendants had actual notice of the lawsuit through the presentment of the government Claim in February 2023. (Opposition at 15.) Indeed, the specific state and federal claims alleged in the Complaint were referenced in the Claim. (Id.) Finally, Plaintiffs properly served Defendants on June 11, 2024 and June 12, 2024. Considering the above, the Court concludes that the Efaw factors weigh in Plaintiffs' favor and finds that declining to dismiss the action is fair, reasonable, and judicially economical. As such, the Court retroactively extends time for service to June 12, 2024 and **DENIES** Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Rule 4(m).

### B.  California Tort Claims Act ("CTCA")

The parties' central disagreement with respect to the CTCA concerns Plaintiffs' timeliness in presenting their claims. The CTCA requires that, before filing a lawsuit, an individual seeking to recover in tort against a public entity for claims relating to death or injury to a person must present the claim to the entity "not later than six months after the accrual of the cause of action." Cal. Gov't Code §§ 905, 911.2, 945.4. Under the CTCA, the date of accrual is

"the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented." Cal. Gov't Code § 901. "State law tort causes of action generally accrue when the wrongful act is committed." Hereford v. City of Hemet, 2024 WL 2107337, at *4 (C.D. Cal. Mar. 4, 2024) (citing Butler v. Los Angeles Cnty., 617 F. Supp. 2d 994, 1002 (C.D. Cal. 2008)). "If a claim is rejected due to untimeliness, then the claimant may file an application to the public agency for leave to present the late claim not later than one year after the accrual of the cause of action." Id. (citing Cal. Gov't Code § 911.4). "If an application for leave to present a claim is denied or deemed to be denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from Section 945.4. The proper court for filing the petition is a superior court that would be a proper court for the trial of an action on the cause of action to which the claim relates." Cal. Gov't Code § 946.6(a).

Here, Plaintiffs filed their Claim on February 10, 2023, nearly ten months after Plaintiff Thompson was informed of Ms. Upton's death. (See Claim.) The County notified Plaintiffs that the Claim was untimely and Plaintiffs would need to apply for leave to present a late claim pursuant to California Government Code § 911.4. (See Notice of Returned Claim.) On April 3, 2023, Plaintiffs submitted an application to file a late Claim. (See Plaintiffs' Late Claim App.) On April 12, 2023, the County denied Plaintiffs' application. (See Denial of Late Claim App.) Plaintiffs then filed a Petition for Order permitting a late government claim in California Superior Court for the County of Riverside. (See Petition.) On December 15, 2023, the Riverside County Superior Court denied the Petition. (See Petition Denial.) On January 5, 2024, Plaintiffs filed their notice of appeal with the California Court of Appeal. (Contreras Decl., Ex. D.) The appeal remains pending. (Appellate Docket.)

1. **Delayed Discovery Doctrine**

Defendants contend that the Riverside County Superior Court's denial of Plaintiffs' Petition requires that this Court dismiss Plaintiffs' state law claims as noncompliant with the CTCA's presentment requirements. (See Motion.) Plaintiffs respond that the state court's decision is not dispositive in cases like this, where the parties dispute the government entity's finding of untimeliness and Plaintiffs have filed a complaint on the merits. (Opposition at 8–9.) The Court agrees with Plaintiffs. In Ovando v. City of Los Angeles, the court reasoned that a Section 946.6 petition concerns whether the claimant should be relieved of CTCA obligations, and does not address the merits of the claims, nor the issue of claim accrual. 92 F. Supp. 2d 1011, 1022 (C.D. Cal. 2000). Accordingly, "[a] dispute over when a claim accrued is a question of whether the claimant has complied with the CTCA and is within a federal court's jurisdiction." Id. As such, the Court considers the parties' arguments concerning the accrual of Plaintiffs' government claims and the timeliness of their submission.

Plaintiffs argue that their claims accrued on August 15, 2022, when they learned Alicia Upton's specific cause of death. (Opposition at 9.) If that is correct, Plaintiffs properly presented their claim within six months of the accrual date as required by the CTCA. Defendants argue that Plaintiffs' claims accrued on April 29, 2022, when Plaintiff Thompson was

informed by a sheriff's deputy that Alicia Upton passed away while in custody.  (Reply at 4–8.)  For the reasons below, the Court agrees with Plaintiffs.

Generally, "the date of accrual of a cause of action for wrongful death is the date of death."  Larcher v. Wanless, 18 Cal. 3d 646, 656–57 (1976).  But under California law, "the [delayed] discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim."  O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1147 (9th Cir. 2002).  "Because '[t]he plaintiff must be diligent in discovering the critical facts' a plaintiff who did not actually know of his claim will be barred 'if he should have known [of it] in the exercise of due diligence.'"  Id. (quoting Bibeau v. Pac. N.W. Research Found. Inc., 188 F.3d 1105, 1108 (9th Cir. 1999), amended by 208 F.3d 831 (9th Cir. 2000)).  A claimant is "held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her."  Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1109.  "Under the California discovery rule, 'the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof.'"  O'Connor, 311 F.3d at 1148 (quoting Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999)); see Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807–09 (2005).  "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."  Garcia v. City of Fullerton, 2002 WL 1980690, at 3 (Cal. Ct. App. Aug. 29, 2002), as modified on denial of reh'g (Sept. 30, 2002).

On April 28, 2022, all Plaintiff Nichole Thompson learned from Defendants was that her daughter had died while in police custody.[4]  Defendants are correct that Plaintiff Thompson independently knew that her daughter struggled with mental health issues—a fact she expressed to the deputy who informed her of her daughter's death.  (Contreras Decl., Ex. C at 215.)  But the deputy gave Plaintiff Thompson no reason to believe that her daughter had died by suicide or that Defendants had engaged in any tortious behavior resulting in her daughter's death.  Indeed, although Alicia Upton was only twenty-one years old, Plaintiff Thompson had reason to believe she could have died without any tortious cause, as she knew her daughter abused methamphetamine.  (Id.)  Drug use and related health problems could have caused Ms. Upton's death, along with a myriad of natural causes, or causes wholly unrelated to Defendants' conduct.  The Court cannot conclude that Plaintiff Thompson had or should have had a suspicion of Defendants' wrongdoing merely because she was informed that her daughter had died in custody.  At that time, Plaintiff did not have sufficient reason to suspect that "someone ha[d] done something wrong' to [her]—"'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding' [citation]."  Norgart, 21 Cal. 4th at 397–98 (internal

---

[4] Plaintiff Matthew Upton, Ms. Upton's father, was incarcerated in a federal prison in West Virginia and was unaware of his daughter's passing.  (See Opposition.)  Defendants do not dispute this fact; they focus only on Plaintiff Thompson's knowledge of Ms. Upton's death.  (See Reply.)

citation and quotations omitted).[5] Nor can Defendants argue that Plaintiffs should have undertaken a more robust investigation of the circumstances surrounding Ms. Upton's death. Despite attempting to contact Defendants multiple times, Plaintiff Thompson was not informed of Ms. Upton's cause of death until four months after the fact. (Contreras Decl., Ex. C at 219–20.) Accordingly, the Court finds that Plaintiffs' claims accrued when Plaintiff Thompson learned that her daughter died by suicide—the moment at which Plaintiffs could suspect that Defendants' tortious actions or omissions could have played a role in Ms. Upton's death. Plaintiffs timely presented their Claim.[6]

## V.     CONCLUSION

For the above reasons, the Court **DENIES** the Motion. The September 9, 2024 hearing is **VACATED**.

**IT IS SO ORDERED.**

---

[5] Defendants point out that Plaintiff Thompson sought legal counsel in the months after she learned of her daughter's in-custody death. (Reply at 5.) But the statement cited by Defendants demonstrates that Plaintiff Thompson sought representation not because she believed she had grounds to sue Defendants, but to assist her in obtaining information about the cause of her daughter's death. (See Contreras Decl., Ex. C at 219 ("Because it was becoming increasingly clear that the Riverside County Sheriff's Department was attempting to stonewall my efforts to uncover the truth behind my daughter's death, I attempted to retain an attorney.").)

[6] Having held that Plaintiffs' Claim was timely presented under the delayed discovery doctrine, the Court declines to reach the question of whether Defendants are estopped from arguing untimeliness.